IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 4, 2019

## IN RE DYLAN S.

### Appeal from the Circuit Court for Monroe County
No. V17320SJ. Michael Sharp, Judge

_____

### No. E2018-02036-COA-R3-PT

_____

This is a termination of parental rights case. Mother/Appellant appeals the trial court's termination of her parental rights to the minor child on the grounds of: (1) abandonment by willful failure to visit and to support, Tenn. Code Ann. § 36-1-113(g)(1); (2) persistence of the conditions that led to the child's removal, Tenn. Code Ann. § 36-1-113(g)(3); and (3) failure to manifest an ability and willingness to assume custody or financial responsibility for the child, Tenn. Code Ann. § 36-1-113(g)(14). Mother also appeals the trial court's determination that termination of her parental rights is in the child's best interest. Because Appellee did not meet her burden to show that Mother willfully failed to support the child, and because Appellee did not meet her burden to show proof of an order in which the child was adjudicated dependent and neglected, we reverse the trial court's findings as to these grounds. We affirm the trial court's termination of Mother's parental rights on the grounds of abandonment by willful failure to visit and failure to manifest an ability and willingness to assume custody or financial responsibility, and on its finding that termination of Appellant's parental rights is in the child's best interest.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed in Part; Affirmed in Part; and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and W. NEAL MCBRAYER, JJ., joined.

Chessia A. Cox, Athens, Tennessee, for the appellant, Tiffany S.[1]

Wencke West, Cleveland, Tennessee, for the appellees, Marla H.

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

# OPINION

## I. Background

Dylan S. ("Child") was born in December 2007 to Tiffany S. ("Appellant," or "Mother") and Kenneth R. ("Father").[2] Mother and Father were never married and have been in an on-again-off-again relationship for approximately ten years. On June 25, 2008, Marla H., the Child's maternal grandmother, filed a petition for temporary custody of the Child in the Hamilton County Juvenile Court. Marla H. filed the petition in response to an open Child Protective Services investigation alleging instability in the parents' home and arrest of Father for drug related charges. The juvenile court removed the Child from Mother's custody and placed him with Marla H. ("Appellee") and her husband, Justin H. Child has lived with Appellee and Justin H. since 2008.

On October 28, 2008, the juvenile court granted temporary custody to Appellee and Justin H. and set the dependency and neglect hearing for November 25, 2009. Appellee avers that the juvenile court found the Child to be dependent and neglected based on drug use by the parents, domestic violence between the parents, and instability of income and housing. However, as discussed, *infra*, our record does not contain the juvenile court's adjudicatory order on dependency and neglect. The record does reveal that Mother has a history of drug use and criminal activity. On March 8, 2017, Mother pled guilty to the charge of possession of drug paraphernalia in Hamilton County. In addition, Mother has been a victim of domestic violence from Father.[3]

On December 15, 2017, Appellee and Justin H. filed a petition for adoption and to terminate Mother's parental rights. As grounds for termination, Appellee and Justin H. averred that Appellant: (1) abandoned the Child by willful failure to visit; (2) abandoned the Child by willful failure to support; (3) failed to remedy the conditions that led to the Child's removal; and (4) failed to manifest an ability and willingness to assume custody or financial responsibility. Appellee and Justin H. further averred that termination of Mother's parental rights was in the Child's best interest. On her pauper's oath, the trial court appointed an attorney to represent Appellant and appointed a guardian ad litem for the Child. Mother filed an answer to the petition, wherein she denied the material allegations made therein and contested that termination of her parental rights was in the Child's best interest.

---

[2] Father's parental rights were also terminated by the trial court; however, he did not appeal. Accordingly, in the instant appeal, we are concerned only with the termination of Mother's parental rights to Child.

[3] The record contains several True Bills indicating Father violated protective orders issued by Hamilton County. While the victim is not named in the True Bills, Marla H.'s unrefuted testimony indicates that Mother obtained a protective order against Father. Marla H. testified that, on multiple occasions, she witnessed the aftermath of what she described as "beatings" by Father against Mother.

The trial court heard the petition for termination of parental rights on August 1, 2018. Although her court appointed attorney was present, Mother did not appear. By order of October 15, 2018, the trial court terminated Mother's parental rights on all grounds averred in Appellee's petition and on its finding that termination of Mother's parental rights was in the Child's best interest. Mother appeals.

## II. Issues

There are two dispositive issues:

1. Whether there is clear and convincing evidence to support any of the grounds the trial court relied on in terminating Mother's parental rights?

2. If so, whether there is clear and convincing evidence to support the trial court's determination that termination of Mother's parental rights is in the Child's best interest?

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or

conviction regarding the truth of the facts sought to be established." ***Id.***

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). On appeal, we review the trial court's findings of fact "de novo on the record, with a presumption of correctness of the findings, unless the preponderance of the evidence is otherwise." ***In re Taylor B.W.***, 397 S.W.3d 105, 112 (Tenn. 2013); Tenn. R. App. P. 13(d). We must then make our "own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim." ***In re Bernard T.***, 319 S.W.3d 586, 596-97 (Tenn. 2010). We review the trial court's conclusions of law de novo with no presumption of correctness. ***In re J.C.D.***, 254 S.W.3d 432, 439 (Tenn. Ct. App. 2007).

## IV. Grounds for Termination of Parental Rights

Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." ***In re Angela E.***, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

## A. Abandonment

We begin with the ground of abandonment generally. In pertinent part, Tennessee Code Annotated section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred . . .

Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102 defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

Tenn. Code Ann. § 36-1-102(1)(A)(i)(2017).

In *In re Audrey S.*, this Court discussed willfulness in the context of the abandonment ground:

The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child under Tenn. Code Ann. § 36-1-102(1)(A)(i) unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing . . . .

The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. Aug. 25, 2005) (internal citations and footnotes omitted). "Whether a parent failed to visit or support a child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment . . . is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 640 (Tenn. Ct. App. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)). As previously discussed, this Court reviews questions of law de novo with no presumption of correctness. *Id.*

In its order terminating Mother's parental rights, the trial court found:
Based upon all of the above, the court finds by clear and convincing evidence that [Mother has] abandoned this child, both for [her] failure to

- 5 -

visit and for [her] failure to support this child or to make any reasonable payments towards the support of this child. The court finds these actions by the parent[] [was] willful. These findings have been proven by clear and convincing evidence.

## 1. Abandonment by Willful Failure to Visit

The trial court found, by clear and convincing evidence, that Mother's parental rights should be terminated on the ground of abandonment by failure to visit. Tenn. Code Ann. § 36-1-102(1)(A)(i). To constitute abandonment, the failure to visit must be willful, see discussion *supra*. We have held that a parent's failure to visit is willful when it is "the product of free will, rather than coercion." *In re Audrey S.,* 182 S.W.3d at 863. The willful failure to visit must have occurred in the four months immediately preceding the filing of the termination petition currently before the court. *In re D.L.B.*, 118 S.W.3d 360, 366 (Tenn. 2003).

In its order terminating Appellant's parental rights, the trial court made the following relevant findings concerning abandonment by willful failure to visit:

The court finds that [Mother] has been in and out of her mother's house throughout the child's life. . . . The court finds that the mother failed to visit during the four months preceding the filing of this petition.

***

Furthermore, the court finds that the last time the mother visited this child was in May or June of 2017. The court finds that that visit was minimal.

This court has emphasized that "visitation is not a rote statutory requirement; it is necessary to maintain the thread of the parent-child relationship[.]" *In re Joshua S.*, No. E2010-01331-COA-R3-PT, 2011 WL 2464720, at *16 (Tenn. Ct. App. June 16, 2011). An absence of contact between a parent and child for an extended period of time can lead to, in effect, the "death" of the relationship. *Id.*

Turning to the record, the petition to terminate Appellant's parental rights was filed on December 15, 2017; therefore, the relevant four-month time period is from August 15, 2017 to December 14, 2017. Mother does not dispute the relevant time period, nor does she dispute that she failed to visit the Child during this period. This fact is supported by the unrefuted testimony. The evidence shows that the Child has lived with Appellee and Justin H. since he was six months old. At the time of the termination hearing, the Child was almost eleven years old. The record shows that Mother knew where the Child was staying and knew how to contact Appellee to arrange visitation. Despite this knowledge, the record shows that Mother took no action to visit or to maintain a relationship with the Child.

- 6 -

There is no evidence that Appellee kept Mother from contact with the Child. Rather, the record clearly and convincingly demonstrates that Mother had the capacity to visit the Child, made no attempts to do so, and had no justifiable excuse for her failure to do so. *See In re Adoption of Angela E.*, 402 S.W.3d at 640. We, therefore, affirm the trial court's termination of Mother's parental rights on the ground of abandonment by willful failure to visit the Child for a period of four consecutive months preceding the filing of the termination petition.

## 2. Abandonment by Willful Failure to Support

A parent willfully fails to support his or her child when, for the relevant four-month period, the parent fails to provide monetary support or fails to provide more than "token payments" toward the support of the child. Tenn. Code Ann. § 36-1-102(1)(D) (defining "willfully failed to support" and "willfully failed to make reasonable payments toward such child's support"). "Token support" is support that, considering the individual circumstances of the case, is "insignificant given the parent's means." *Id.* at (1)(B). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. Jan. 23, 2004), *perm. app. denied* (Tenn. May 10, 2004) (quoting *In Re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)). Although it is undisputed that Mother paid no support for the Child during the relevant time period, in order to prove this ground, Appellee had the burden to show that Mother had the capacity to provide support. *In re J.J.C.*, 148 S.W.3d at 926. As this Court explained:

> It is axiomatic that "in order to establish the ground of abandonment by willful failure to support by clear and convincing evidence, the party seeking termination must generally 'submit . . . evidence regarding [the parent's] employment, income, [or] other non-monetary assets,' as well as the parent's 'expenses during the four-month period.'" *In re Michael B.*, No. M2015-02497-COA-R3-PT, 2016 WL 7486361, at *11 (Tenn. Ct. App. Oct. 6, 2016) (quoting *In re Destiny H.*, No. W2015-00649-COA-R3-PT, 2016 WL 722143, at *9 (Tenn. Ct. App. Feb. 24, 2016)). Such evidence need not be an accounting of every dollar earned and spent, and it need not even be tied to dollars and cents, but it must be clear and convincing evidence that the parent had the capacity to pay support, did not do so, and had no justification for not doing so. In the case of *In re Adoption of Angela E.*, 402 S.W.3d at 641, in the context of examining whether the father's payments were "token support," our Supreme Court stated that the evidence of the father's income and expenses was "limited at best" and failed to prove that his payments were "token support." *See also In re Michael B.*, 2016 WL 7486361, at *11 (discussing

- 7 -

*In re Adoption of Angela E.* and other cases regarding proof of employment, income, other non-monetary assets, and expenses necessary to establish a parent's capacity to pay support).

*In re Preston L*., No. M2016-02338-COA-R3-PT, 2017 WL 4315356, at *5 (Tenn. Ct. App. Sept. 27, 2017).

In its order terminating Mother's parental rights, the trial court found:

The court finds that the mother . . . has never provided any meaningful support of any kind, or made any reasonable payments toward the support of the child for many years. Furthermore, the court finds that on those rare occasions when the mother did provide any money to the petitioner herein, she always asked the petitioner to give it back to her, which the petitioner apparently did. The un-refuted evidence before this court is that the mother has not provided any support, or even a birthday card or gift, nor any Christmas gift for the child.

Although the record clearly shows that Mother failed to provide any support for the Child during the relevant time period, what is lacking from the record is proof that Mother's failure to provide support was willful. As noted by this court, "[w]illful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent." *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. Aug. 25, 2005) (citations omitted). In the context of willful failure to support one's child, the willfulness criterion must be established, by the party seeking termination, by showing that the parent had the means and ability to provide support. *In re J.J.C.*, 148 S.W.3d at 926. Here, the record is devoid of any evidence to show Mother's income, expenses, or employment history. The absence of such evidence is fatal to the ground of abandonment by willful failure to support. Appellee contends that the unrefuted testimony that Mother failed to pay any child support is *ipso facto* sufficient to prove the ground of abandonment. We disagree. As discussed above, Appellee not only has the burden to show that Mother failed to provide support during the relevant time period, but she also has the burden to show that Mother's failure to do so was willful. Appellee has failed to meet her burden to show that Mother's failure to support was willful; as such, we reverse the trial court's termination of her parental rights on this ground.

### B. Persistence of the Conditions that Led to the Child's Removal

The trial court found, by clear and convincing evidence, that Mother's parental rights should be terminated on the ground of persistence of the conditions that led to the Child's removal from her custody. Tenn. Code Ann. § 36-1-113(g)(3). Tennessee Code Annotated section 36-1-113(g)(3) defines persistence of conditions as follows:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent or parents or the guardian or guardians, still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent or parents or the guardian or guardians in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home[.]

Tenn. Code Ann. § 36-1-113(g)(3). The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status . . . if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010), *overruled on other grounds by In re Kaliyah S.*, 455 S.W.3d 533 (Tenn. 2015).

In *In re Audrey S.*, this Court held that based on the statutory text and its historical development, the ground of persistence of conditions found in Tennessee Code Annotated section 36-1-113(g)(3) provides a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse. *In re Audrey S.*, 182 S.W.3d at 872. Where the parents have not admitted this element, the petitioner has the burden of proving it. "[T]he mere suggestion or possibility of an order *adjudicating* the child dependent and neglected is not good enough." **In re R.L.M.**, No. E2013-02723-COA-R3-PT, 2015 WL 389635, at *3 (Tenn. Ct. App. Jan. 29, 2015) (emphasis added); *see also In re Audrey S.*, 182 S.W.3d at 872 (holding that a temporary custody order and preceding restraining order entered in a dependency and neglect proceeding were not sufficient to make a judicial finding that the child was dependent, neglected, or abused).

The record contains the following from the juvenile court proceedings: (1) Marla H.'s petition for temporary custody based on the allegations of dependency and neglect; (2) findings and recommendations of the juvenile court referee, which were filed on October 28, 2018. These findings and recommendations are signed by the Special Referee, but there is no indication that they were adopted as the findings of the juvenile court. We have conducted a thorough search of the record for evidence of an adjudicatory hearing. Although Appellee alleges "[t]he grounds for dependency and

neglect found by the court involved drug use by the parents, domestic violence between the parents, and instability of income and housing," the record contains no adjudicatory order on dependency and neglect. This Court has explained that, in order to meet the burden of proof for termination of a parent's parental rights on the ground of persistence of conditions, the petitioner is "required to offer proof of an order in which the child was adjudicated dependent and neglected." *In re R.L.M.*, No. E2013-02723-COA-R3-PT, 2015 WL 389635, *4 (Tenn. Ct. App. Jan. 29, 2015). In *In re R.L.M*, we explained that

> [d]espite the various indications . . . that there was such a judicial finding of dependency and neglect, no adjudicatory order appears of record. Consistent with our prior holdings, we conclude that neither the trial court nor this Court is permitted to proceed to termination absent clear and convincing proof of every necessary element of a ground for termination.

*Id.* The same is true in this appeal. In the absence of the necessary adjudicatory order on dependency and neglect, we conclude that Appellees have failed to meet their burden to show, by clear and convincing proof, that the conditions that led to the Child's removal from Mother persist. As such, we reverse the trial court's termination of Mother's parental rights on this ground.

### C. Failure to Manifest an Ability and Willingness to Assume Custody or Financial Responsibility of the Child

Tennessee Code Annotated section 36-1-113(g)(14) provides a ground for termination of a parent's parental rights when he or she:

> has failed to manifest, by act or omission, an ability and willingness to personally assume legal and physical custody or financial responsibility of the child, and placing the child in the person's legal and physical custody would pose a risk of substantial harm to the physical or psychological welfare of the child.

Tenn. Code Ann. § 36-1-113(g)(14). This ground for termination of parental rights was added to the statute effective July 1, 2016. *See* 2016 Tenn. Pub. Acts, c. 919, § 20. Concerning the substantive requirements to meet the burden of proof, in *In re Maya R.*, No. E2017-01634-COA-R3-PT, 2018 WL 1629930, at *7 (Tenn. Ct. App. Apr. 4, 2018), we explained that, first, the petitioner must prove that the parent has failed to manifest "an ability and willingness to personally assume legal and physical custody or financial responsibility of the child." Tenn. Code Ann. § 36-1-113(g)(14). Second, the petitioner must prove that placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child." *Id.*

Concerning the first prong, i.e., whether the parent has failed to manifest an ability

- 10 -

and willingness to personally assume custody and financial responsibility of the Child, there has been some disagreement in this Court regarding the measure of proof required to satisfy this burden. In *In re Ayden S.*, No. M2017-01185-COA-R3-PT, 2018 WL 2447044, at \*7 (Tenn. Ct. App. May 31, 2018), a panel of this Court held:

> As to the first prong [of Tennessee Code Annotated Section 36-1-113(g)(14)], the statute requires the party seeking termination to prove a negative: that the parent failed to manifest an ability and willingness to personally assume legal and physical custody or financial responsibility of the child. Here, despite finding that the parents "ha[d not] failed to manifest a willingness to assume custody" and that the "parents want these children," the juvenile court concluded DCS proved by clear and convincing evidence this ground against both parents. The court based its conclusion on the finding that the parents "d[id not] have the ability" to personally assume custody of the children.
>
> In general, "statutory phrases separated by the word 'and' are usually to be interpreted in the conjunctive." *Stewart v. State*, 33 S.W.3d 785, 792 (Tenn. 2000). In the context of a "negative proof" connected by the word "and," a party "must prove that . . . all" of the listed items were not met. Antonin Scalia & Bryan A. Garner, <u>Reading Law: The Interpretation of Legal Texts</u> 120 (2012).
>
> At oral argument, DCS urged that we interpret the word "and" in the disjunctive so that it only had to prove an inability or unwillingness of the parents to assume custody of the children. Our supreme court has "recognized that the word 'and' can also be construed in the disjunctive where such a construction is necessary to further the intent of the legislature." *Stewart v. State*, 33 S.W.3d at 792. But because "we generally presume that the General Assembly purposefully chooses the words used in statutory language," *id.*; cf. Scalia & Garner, *supra*, at 116 ("Under the conjunctive/disjunctive canon, and combines items while or creates alternatives."), and the presumption has not been rebutted, we decline to adopt DCS's interpretation here.
>
> We conclude that Tennessee Code Annotated § 36-1-113(g)(14) could not serve as a basis for terminating Mother's and Father's parental rights. The proof at trial negated a required element of the statutory ground. The juvenile court found: "In this case, these parents definitely want to assume legal and physical custody of the children and are willing to assume financial responsibility for the children."

However, in the subsequent case of ***In re Amynn K.***, No. E2017-01866-COA-R3-PT, 2018 WL 3058280 (Tenn. Ct. App. June 20, 2018), a panel of this Court parsed the conjunctive (as opposed to disjunctive) language used in Tennessee Code Annotated section 36-1-113(g)(14) and compared the statutory language to other similar statutes before holding that

> [u]pon consideration of the statutory language and the relevant legal authority, we hold that the first prong of Tennessee Code Annotated § 36-1-113(g)(14) requires that the petitioner prove that a parent has failed to meet the requirement of manifesting both a willingness and an ability to assume legal and physical custody of the child or has failed to meet the requirement of manifesting both a willingness and an ability to assume financial responsibility of the child.

***Id.*** at *14. This dispute continues in cases where a parent manifests a willingness to assume custody and financial responsibility but is simply unable to do so; however, this is not such a case. In cases, such as the one at bar, where the parent has manifested neither a willingness nor an ability to assume custody and responsibility, this Court has upheld termination of the parent's parental rights on this ground. *See, e.g.*, ***In re J'Khari F.***, No. M2018-00708-COA-R3-PT, 2019 WL 411538, at *15 (Tenn. Ct. App. Jan. 31, 2019) (noting both ***In re Ayden S.*** and ***In re Amynn K.*** but ultimately concluding that DCS presented sufficient evidence that "Mother was not able or willing to assume physical or legal custody of or financial responsibility for the Child"); ***In re Colton B.***, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *9-10 (Tenn. Ct. App. Oct. 29, 2018) *perm. app. denied* (Tenn. Jan. 22, 2019) (noting the split in authority but holding that it was unnecessary to choose one approach where the parent had manifested neither an ability nor a willingness to parent the child). Likewise, here, the trial court found that Mother has:

> failed to manifest any ability to assume custody of this child. [She] continue[s] to plead guilty to criminal charges and drug related offenses, even as late as 2017.
>
> ***
>
> The court is moved by the fact that [Mother] failed to appear at this hearing and . . . failed to assist [her] counsel, even though counsel was appointed for them and for their benefit.
>
> The court finds that [Mother] has [not] shown any desire to consistently provide for or care for this child, including a willingness and/or ability to provide the child with a safe and stable home, and food, shelter and other necessities.

- 12 -

From our review of the record, there is clear and convincing proof to support the trial court's findings.

Turning to the record, as recently as 2017, Mother was charged with a drug related offense. Unrefuted testimony shows that prior to the termination hearing, Mother moved back into Father's home despite a protracted history of domestic abuse and violence between them. As discussed in detail above, Mother has paid no child support in the relevant four-month period. Further evidence shows that Mother has never sent gifts or cards to the Child and has failed to acknowledge the Child's birthday. Marla H. testified that, even during the few sporadic times Mother lived with Appellee and the Child, Mother did not take over the Child's care. Rather, during these times, Marla H. testified that "as far as like preparing meals or any financial or domestic things, I've cared for Dyl as far as, like everything you would care for a child." Finally, despite notice of the hearing, Mother did not appear before the trial court. Mother's attorney indicated that she made multiple attempts using various means to contact Mother about the hearing. Mother's attorney stated, "I've sent letters and left phone messages with other family and friends[,] but I've not spoken to her directly in the time frame from when we had our phone conference and chose this reset date. . . ." As noted by the trial court, Mother's failure to appear and to assist her counsel in preparing a defense is indicative of Mother's efforts and care throughout this Child's life. Even when faced by the possibility of having her parental rights forever terminated, she failed to make any real effort. This fact clearly shows a failure to manifest an ability and willingness to assume parental responsibility.

Turning to the second prong of Tennessee Code Annotated section 36-1-113(g)(14), i.e., whether placing the child in the parent's custody "would pose a risk of substantial harm to the physical or psychological welfare of the child," this Court has explained:

> The courts have not undertaken to define the circumstances that pose a risk of substantial harm to a child. These circumstances are not amenable to precise definition because of the variability of human conduct. However, the use of the modifier "substantial" indicates two things. First, it connotes a real hazard or danger that is not minor, trivial, or insignificant. Second, it indicates that the harm must be more than a theoretical possibility. While the harm need not be inevitable, it must be sufficiently probable to prompt a reasonable person to believe that the harm will occur more likely than not.

*In re Virgil W.*, No. E2018-00091-COA-R3-PT, 2018 WL 4931470, at \*8 (Tenn. Ct. App. Oct. 11, 2018) (quoting *Ray v. Ray*, 83 S.W.3d 726, 732 (Tenn. Ct. App. 2001)).

The trial court made the following relevant findings:

- 13 -

The court finds that [Mother] has [not] demonstrated any ability to protect the subject child from exposure to illegal drugs or domestic violence. The court finds that [Mother] ha[s] failed to disassociate [herself] from persons and/or parties involved with the use and/or distribution of illegal drugs. The court further finds that [Mother] has [not] shown any ability to maintain stable housing and/or stable home for this child.

The court finds that [Mother] continue[s] to be unstable, and that [she] ha[s] failed to take any reasonable steps to provide a safe, stable home environment for [her] child. The court find[s] that [Mother's] lifestyle[] and the individuals that [she] continue[s] to associate with pose a risk of substantial harm to the child.

The evidence clearly and convincingly supports the trial court's findings.

Turning to the record, the Child testified that he does not enjoy seeing his Mother. Indeed, it is apparent, from the record, that the Child considers Appellee and Justin H. to be his parents and finds their home to be a safe and nurturing environment. The Child, who was almost eleven at the time of the hearing, has resided exclusively with Appellee and Justin H. for nearly ten years. The Child has done well in the home and, by all accounts, is happy and well-adjusted. Conversely, the undisputed testimony shows that, throughout the Child's life, Mother has engaged in illegal drug use, criminal activity, and has maintained a generally unstable lifestyle. There is no evidence concerning any significant steps Mother has taken to remedy her situation so as to make a safe and stable home for the Child. From the totality of the circumstances and the Child's own testimony, we conclude there is clear and convincing evidence that returning the Child to Mother's custody "would pose a risk of substantial harm to the physical and psychological welfare of the Child." Tenn. Code Ann. § 36-1-113(g)(14). Accordingly, we affirm the trial court's termination of Mother's parental rights on the ground of failure to manifest an ability and willingness to assume custody or financial responsibility of the child.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. *White v. Moody*, 171 S.W.3d 187, 192 (Tenn. Ct. App. 1994). As the Tennessee Supreme Court recently explained:

Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S.*, 455 S.W.3d at 555 (citing *In re Audrey S*., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should

- 14 -

then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id.* When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S*., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id.* "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d)(2017).

*In re Gabriella D*., 531 S.W.3d 662, 681-82 (Tenn. 2017).

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to this appeal, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

***

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. Aug. 11, 2005), *perm. app. denied* (Tenn. Nov. 21, 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S*., 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Moody*, 171 S.W.3d at 194.

> Concerning the Child's best interest, the trial court found:

> [T]he petitioner and her husband have cared for this child most of his entire life. The court finds that the petitioner and her husband have provided a safe, stable, loving home, and have cared for the child all the days of his life. The court finds that the child is apparently thriving in the petitioners' home, and that the petitioners have protected this child from the destructive, criminal, and potentially harmful behavior of his biological parents. The court finds that it is very much in the best interest of this child for the termination of the parental rights of [Mother].

The evidence clearly and convincingly supports the trial court's finding that termination of Mother's parental rights is in the Child's best interest. As discussed above, the Child has not lived with Mother and has not had consistent, quality time with her since he was six months old. The Child testified that he likes the house he lives in, the school he goes to, and living with his grandparents. Conversely, Mother's lifestyle is unstable. She engages in drug and other criminal activity. Furthermore, she insists on living with

Father despite the well-established fact that he is violent and abusive. To remove this Child from the only home he has ever known, which is stable and safe, would likely cause the Child significant emotional and/or physical harm. This fact, coupled with Mother's failure to support or to visit the Child, along with her refusal to even manifest a willingness or ability to parent him, clearly and convincingly supports the trial court's finding that termination of Mother's parental rights is in the Child's best interest.

## VI. Conclusion

For the foregoing reasons, we reverse the trial court's termination of Mother's parental rights on the grounds of abandonment by willful failure to support and persistence of conditions. We affirm the termination of Mother's parental rights on the remaining grounds of abandonment by willful failure to visit and failure to manifest an ability and willingness to assume custody or financial responsibility for the Child, and on its finding that termination of Mother's parental rights is in the Child's best interest. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed to Appellant, Tiffany S. Because Tiffany S. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

 

 

_____

KENNY ARMSTRONG, JUDGE